IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CARMEL GUZMAN,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 3:16-cv-00362-AA<br>**OPINION AND ORDER** |

AIKEN, Judge:

Plaintiff Carmel Guzman brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

In June 2012, plaintiff applied for DIB. She alleged disability beginning October 30, 2008, due to arthritis, phlebitis, dyslexia, obesity, and an audio processing disorder. Her

Page 1 – OPINION AND ORDER

application was denied initially and upon reconsideration. On November 6, 2014, plaintiff appeared at a hearing before an ALJ. At the hearing, plaintiff testified and was represented by a non-attorney advocate. A vocational expert ("VE") also testified. The ALJ found plaintiff not disabled in a written decision issued December 8, 2014. After the Appeals Council denied review, plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. 20 C.F.R. §§ 404.1520(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: "degenerative disc disease, osteoarthritis, obesity, learning disorder and depression." Tr. 12; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

After considering plaintiff's residual functional capacity ("RFC"), the ALJ concluded plaintiff could not perform any of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). At step five, however, the ALJ found that plaintiff could perform work existing in the national economy; specifically, plaintiff could work as a small parts assembler. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied his applications for benefits.

## DISCUSSION

Plaintiff contends the ALJ committed reversible error at two places in the five-step analysis. First, plaintiff asserts the ALJ erroneously rejected the opinions of an examining psychologist and an agency reviewing psychologist without legally sufficient justification. As a result, plaintiff avers the RFC does not account for all her limitations. Second, plaintiff argues the ALJ failed to resolve a conflict between the testimony of the VE and the Dictionary of Occupational Titles ("DOT") regarding the requirements of the job of small parts assembler. Because small parts assembler is the only job the ALJ identified at step five, plaintiff asserts

Page 3 – OPINION AND ORDER

remand is necessary to determine whether there is work in the national economy she is able to perform.

I. *Treatment of Medical Opinions*

Plaintiff challenges the ALJ's treatment of two medical opinions: the opinion of examining psychologist Dr. Stradinger and the opinion of agency reviewing psychologist Dr. Friedburg. There are three types of medical opinions in Social Security disability cases: those of treating, examining, and reviewing physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202; *accord* 20 C.F.R. § 404.1527(d). Accordingly, "the Commissioner must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Moreover, "the opinion of an examining doctor, even if contracted by another doctor, can only be rejected for specific and legitimate reasons." *Id.* at 830–31.

But the "clear and convincing" and "specific and legitimate" standards only apply when the ALJ *rejects* all or part of a medical opinion. *See Turner v. Comm'r Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010). If an ALJ *credits* a medical opinion and incorporates observations from that opinion into the RFC, there is no conflict to resolve. *Id.* Moreover, an ALJ need not use the precise wording of a medical opinion in order to incorporate its findings; indeed, it is the ALJ's task to translate the often-vague limitations included in medical opinions into "concrete restrictions" applicable to the workplace. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174.

Dr. Stradinger, an examining psychologist, diagnosed plaintiff with dyslexia-learning disability-audio processing and depression. She found plaintiff to be "unimpaired for performing

Page 4 – OPINION AND ORDER

simple and repetitive tasks and detailed and complex tasks." Tr. 372. She assessed "moderate impairment for accepting instructions from supervisors and interacting with coworkers and the public given her auditory processing difficulties, mood and personality issues." *Id.* She further predicted "moderate impairment for performing work activities on a consistent basis without special or additional instruction given her auditory processing difficulties." *Id.* Dr. Friedburg, an agency reviewing psychologist, opined that plaintiff could understand and remember "simple/routine instructions/procedures" but not more complex instructions or procedures. Tr. 87. She recommended limiting plaintiff to only occasional interaction with the general public. Like Dr. Stradinger, Dr. Friedburg found plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors would be "[m]oderately limited." Tr. 88. Dr. Friedburg agreed with Dr. Stradinger that plaintiff's auditory processing impairment, mood, and personality issues would cause her to "struggle" to accept criticism and feedback. *Id.* But Dr. Friedburg expressly opined that, ultimately, plaintiff would be able to overcome that struggle.

The ALJ gave "great weight" to the opinions of both Dr. Stradinger and Dr. Friedberg. Tr. 16, 17. The ALJ qualified her adoption of Dr. Stradinger's opinion by finding that, provided plaintiff is in a "simple, routine work setting[,] . . . she would not have difficulties accepting instructions from supervisors, interacting with coworkers or performing work activities on a consistent basis without special instruction." Tr. 16. The ALJ accommodated plaintiff's non-exertional limitations with the following portion of the RFC:

> She can remember, understand and carry out simple tasks or instructions typical of occupations with an SVP of 1 or 2. She would learn best by demonstration. She should have only occasional superficial incidental [contact] with the general public. She can engage in brief conversation but nothing in depth or ongoing such as negotiation or mediation type tasks.

Tr. 13.

Page 5 – OPINION AND ORDER

Plaintiff argues the limitations in the RFC are less restrictive than the limitations set out in Dr. Stradinger's and Dr. Friedberg's opinions, and that the ALJ therefore erred by silently rejecting a portion of those opinions. Specifically, plaintiff contends the RFC should have included more restrictive limitations regarding (1) taking instruction/responding to criticism from supervisors and (2) receiving special or additional instructions to account for auditory processing difficulties. The government disagrees, responding that the ALJ permissibly translated the limitations in Dr. Stradinger's and Dr. Friedberg's opinions into concrete workplace limitations.

I begin by examining the evidence regarding plaintiff's ability to receive instruction and respond to criticism from supervisors. Dr. Stradinger's assessment of "moderate" problems in this area is the sort of vague limitation that might, in the absence of other medical opinion evidence, trigger the ALJ's duty to further develop the record. *See Vasquez v. Berryhill*, 2017 WL 2633413, *6 (E.D. Cal. June 19, 2017). Here, however, there was additional evidence available. Specifically, Dr. Friedberg agreed with Dr. Stradinger[1] that plaintiff would have moderate limitations in this area, and then expressly opined that plaintiff ultimately would be able to overcome those problems. In other words, Dr. Friedberg translated "moderate" into a concrete workplace limitation. The ALJ permissibly reached the same conclusion. The RFC adequately accounts for plaintiff's difficulties accepting instruction and criticism from supervisors by limiting the complexity of those instructions and providing that plaintiff would learn best by demonstration.

---

[1] Although Dr. Friedberg does not cite Dr. Stradinger by name, Dr. Friedberg's word choice tracks Dr. Stradinger's evaluation almost exactly. *Compare* Tr. 88 (referring to plaintiff's "auditory processing difficulties, mood and personality issues") *with* Tr. 372 (citing plaintiff's "auditory processing difficulties, mood & person[a]lity issues"). It is clear that Dr. Friedberg considered and endorsed Dr. Stradinger's evaluation in reaching her opinion.

Page 6 – OPINION AND ORDER

Next, I address plaintiff's need for special or additional instructions due to auditory processing difficulties. This limitation comes from Dr. Stradinger's opinion; Dr. Friedberg mentioned no similar limitation. Dr. Stradinger found plaintiff could perform both simple and complex tasks. Dr. Friedberg, by contrast, predicted moderate impairment for complex tasks. Having reviewed both opinions, the ALJ reasonably concluded that the need for special or additional instructions would vary depending upon the complexity of the task. She therefore accounted for some of Dr. Stradinger's limitation by restricting plaintiff to simple tasks or instructions—a limitation consistent with Dr. Friedberg's opinion and more restrictive than Dr. Stradinger's opinion. The ALJ accounted for the rest of Dr. Stradinger's limitation through the recommendation that plaintiff learn by demonstration, which would further ameliorate the effects of plaintiff's auditory processing deficit on learning and retaining information. The RFC adequately accounts for plaintiff's need for special or additional instructions due to auditory processing difficulties.

In sum, I find no error in the ALJ's treatment of the psychologists' opinions. The ALJ did not reject any portion of either opinion but reasonably translated the restrictions in the opinions to concrete workplace limitations.

II. *VE Testimony at Step Five*

Plaintiff also alleges error at step five of the sequential process. She contends there is a conflict between the limitations in the RFC and the job requirements of small products assembler, the job the ALJ identified at step five.

Social Security regulations use the exertional demands of various jobs to classify work into five categories: sedentary, light, medium, heavy, or very heavy. SSR 83-10, *available at* 1983 WL 31251, *2. The classifications are based on the extent of a job's requirements in the

Page 7 – OPINION AND ORDER

"primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.* Frequently, however, a disability claimant's limitations will place her between two categories; for example, she may be able to exceed the demands of sedentary work but not meet all the demands of light work. In such "in the middle" situations, the regulations specifically suggest the assistance of VE in determining the effect of the additional limitations on the occupational base. SSR 83-12, *available at* 1983 WL 31253, *3.

An ALJ has an affirmative responsibility to ask whether VE testimony is consistent with the DOT. *See Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007) (interpreting SSR 00-4p, *available at* 2000 WL 1898704, *2). If there is a conflict between the VE testimony and the DOT, the ALJ must determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the VE's testimony rather than on the DOT. *Massachi*, 486 F.3d at 1153; SSR 00-4p at *2. If the ALJ asks about consistency with the DOT and the VE identifies no conflict, the ALJ is obligated to inquire further only when the conflict between the VE testimony and the DOT is "apparent or obvious." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016). In general, an ALJ may rely on VE testimony to support the conclusion that the claimant is "capable of performing substantial gainful employment that exists in the national economy." *Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001). In *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 n.4 (9th Cir. 2005), the plaintiff argued that an ALJ could rely on VE testimony if that testimony met the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as codified in Federal Rule of Evidence 702. The court rejected that argument, explaining that the Social Security Act specifically provided for less stringent evidentiary standards. *See Bayliss*, 427 F.3d at 1218 n.4 (citing 42 U.S.C. § 405(b)(10 and 20 C.F.R. § 404.950(c)). In a Social Security disability hearing, "[a]n ALJ may take administrative

notice of any reliable job information, including information provided by a VE. A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Id.* at 1217–18.

The ALJ here identified a single job at step five of the analysis: small products assembler, classified as light work. U.S. Dep't of Labor, Dictionary of Occupational Titles 706.684-022. The Social Security regulations define "light work" as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567. The ALJ formulated an RFC that substantially constrains plaintiff's ability to do light work. Specifically, the ALJ found plaintiff can

> lift and carry 20 pounds occasionally and 10 pounds frequently and stand and walk 2 hours and sit 6 hours out of an 8-hour day. She would need to alternate positions such that she could sit an hour at a time and then would need to stand for 5 to 10 minutes without leaving the workstation. She cannot climb ladders, ropes or scaffolds and can only occasionally stoop, kneel, crouch and crawl. She should avoid exposure to extreme cold, excessive vibration such as jackhammers, and hazards such as unprotected heights and dangerous machinery.

Tr. 13. Thus, plaintiff is one of the "in the middle" disability claimants for which the regulations recommend VE assistance. SSR 83-12 at *3.

The most substantial difference between the requirements of the full range of light work and plaintiff's RFC is the limitation on walking and standing. In general, light work occupations require six hours per workday of standing and walking. *See* SSR 83-10 at *6. Plaintiff is able to stand and walk for a maximum of only two hours per workday.

At the hearing, the VE agreed to "advise" the ALJ if her testimony conflicted with information in the DOT. Tr. 54. The ALJ then specifically asked the VE about plaintiff's

Page 9 – OPINION AND ORDER

standing/walking limitation and the way in which it narrowed the available range of light work occupations. Before the ALJ imposed that limitation, the VE had identified light assembly as a job plaintiff could perform. The VE testified that there are 6,000 light assembly jobs in the local economy and more than 600,000 light assembly jobs in the local economy. Tr. 57. When the ALJ added a limitation to stand/walk a maximum of two hours per workday, the VE testified that although there would be a "reduction" in available assembly work, "there would still be greater than 2,000 statewide and greater than 200,000 nationally that would remain appropriate for assembly." Tr. 58. The VE then stated that there were no unexplained inconsistencies with the DOT in his testimony. On cross-examination, plaintiff's representative asked the VE to provide an example of a local employer that permits its employees to perform small assembly work in a seated position. The VE responded that Leatherman Tools has seated assembly jobs.

Plaintiff contends that the VE's testimony conflicted with the DOT and that the ALJ relied on the VE's testimony instead of the DOT without an adequate explanation. As a threshold matter, the ALJ met the first requirement of *Massachi* and SSR 00-4p by twice asking about any conflict with the DOT. However, I find that the ALJ had an affirmative obligation to inquire further because there is an apparent conflict between the DOT and the VE's testimony. *Gutierrez*, 844 F.3d at 808. Social Security guidance states that "[t]he major difference between sedentary and light work is that most light jobs—particularly those at the unskilled level of complexity—require a person to be standing or walking most of the workday." SSR 83-14, *available at* 1983 WL 31254, *4; *see also* SSR 83-10 at *5 ("Relatively few unskilled light jobs are performed in a seated position.") The "strength" portion of the DOT description of small products assembler states that the physical demands are "in excess of sedentary work." U.S.

Dep't of Labor, Dictionary of Occupational Titles 706.684-022. The description goes on to state that jobs requiring negligible lifting should nonetheless be classified as "light work" when they require a "significant degree" of standing or walking, sitting "most of the time" but with "pushing and/or pulling of arm or leg controls," or when production pace requirements entail "constant pushing and/or pulling of materials." *Id.* The entry does not indicate which of these three possibilities supports classifying small products assembler as light rather than sedentary work. The VE's identification of small parts assembly as a job plaintiff could perform therefore created an obvious or apparent conflict with the DOT, triggering the ALJ's obligation to inquire further. *Cf. Berry v. Berryhill*, 2017 WL 2829621, *6 (D. Or. June 30, 2017) (finding an apparent conflict between VE testimony and the DOT when the VE testifies that light or sedentary work can be performed with a sit-stand option).

The ALJ satisfied that obligation. She specifically identified the walk/stand limitation as inconsistent with the general light work description and asked the VE about its effect on the occupational base. The VE acknowledged that the range of available jobs would be substantially narrowed yet nonetheless opined 2,000 local and 200,000 national jobs would remain viable. Under well-established Ninth Circuit law, the ALJ permissibly relied on the VE's expertise to take administrative notice of those numbers. *See Bayliss*, 427 F.3d at 1218. Plaintiff argues that the VE impermissibly extrapolated local and national data from a single exemplar, Leatherman Tools. But the VE provided Leatherman Tools as an example in response to plaintiff's questions on cross-examination; there is no evidence that Leatherman Tools formed the basis of the VE's opinion regarding total available jobs. Rather, it is the VE's expertise that formed the foundation for his opinion.

The ALJ did not err at step five. Although there was an apparent conflict between the VE's testimony and the DOT, the ALJ satisfied her obligation to obtain an explanation of the conflict and permissibly relied on the VE's expertise in determining how many small parts assembler jobs could be performed in a seated position.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 16 day of August 2017.

Ann Aiken
United States District Judge